## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YASIN HAJIZADEH, *et al.*,

          *Plaintiffs*,

    v.

ANTONY J. BLINKEN,

          *Defendant*.

Civil Action No. 23-1766 (LLA)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Yasin Hajizadeh, a United States citizen, and his mother Azar Moghaddamkia, an Iranian national, seek to compel Defendant Antony J. Blinken, in his official capacity as Secretary of State, to adjudicate Ms. Moghaddamkia's immigrant visa application.  ECF No. 1. Plaintiffs contend that Ms. Moghaddamkia's visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.  Secretary Blinken has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).  ECF No. 5.  For the reasons explained below, the court will dismiss under Rule 12(b)(6).

### I.      Background

The court draws the facts, accepted as true, from Plaintiffs' complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).  It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA") provides that a U.S. citizen or lawful permanent resident who wishes to obtain lawful permanent status for an immediate relative must

file a Petition for Alien Relative (Form I-130).  *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1).  If

U.S. Citizenship and Immigration Services ("USCIS") approves the petition, it is sent to the State

Department's National Visa Center ("NVC").  8 C.F.R. § 204.2(a)(3).  The foreign national must

then submit another application to the NVC and await an interview with a consular officer at the

appropriate embassy.  22 C.F.R. §§ 42.61-.62.  At the conclusion of the interview, "the consular

officer must [either] issue [or] refuse the visa."  *Id.* § 42.81(a).  If a consular officer determines

that he does not have sufficient information to establish visa eligibility, the officer may "refuse"

the visa pending further administrative processing pursuant to Section 221(g) of the INA, which

typically consists of additional information-gathering.  U.S. Dep't of State, *Administrative

Processing Information*;[1] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18

(D.D.C. 2022).

> Mr. Hajizadeh filed Form I-130 on his mother's behalf.  ECF No. 1 ¶ 27.  USCIS approved
the application on December 29, 2022, and then forwarded it to the NVC.  ECF No. 8, at 1.  By
January 14, 2023, Plaintiffs had submitted the necessary additional forms, documentation, and fees
to schedule Ms. Moghaddamkia's interview with a consular officer.  ECF No. 1 ¶¶ 3, 77.  On
May 30, 2023, Ms. Moghaddamkia interviewed at the U.S. Embassy in Muscat, Oman.  *Id.* ¶ 78.
The embassy later requested additional information via email on June 6, 2023, and by the next
day, Mr. Hajizadeh had submitted a detailed response on behalf of his mother.  *Id.* ¶¶ 79-80.  Since
then, Ms. Moghaddamkia's visa application status on the State Department's Consular Electronic
Application Center webpage has continued to show that the case is "refused for administrative
processing."  *Id.* ¶ 82.  Plaintiffs have not yet received a final adjudication on
Ms. Moghaddamkia's pending visa application.  *Id.* ¶ 83.

---

[1] *Available at* https://perma.cc/44NK-RVZE.

The delay in adjudication has "caus[ed] severe emotional distress and psychological harm to the entire family by forcing them to remain separated with no idea when they will be reunited." *Id.* ¶ 87.  Mr. Hajizadeh "is worried he will not be able to care for his mother in Iran where she is alone and suffering from multiple health issues," ECF No. 8, at 32, including disease in her mitral valve, severe psoriasis, and arthritis in her knee, *id.* at 12; ECF No. 8-5, at 3.  He notes the difficulty and danger of traveling to Iran, where he "jeopardize[s] his safety and freedom" each time he visits his mother.  ECF No. 8, at 32.  Plaintiffs also note the "considerable amount of money" that they have spent on expenses related to Ms. Moghaddamkia's visa application.  ECF No. 1 ¶ 89.

On June 18, 2023, Plaintiffs filed a petition for mandamus and complaint for declaratory and injunctive relief against Secretary Blinken, seeking to compel him and those acting under him to complete the adjudication of Ms. Moghaddamkia's visa application within thirty days.  ECF No. 1, at 17-28.  Secretary Blinken has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 5.  The matter is fully briefed.  ECF Nos. 5, 8, 12.

## II.    Legal Standard

Plaintiffs bear the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Id.*

### III. Discussion

Secretary Blinken raises myriad arguments for dismissal under Rule 12(b)(1) and (b)(6), including arguments about standing, nonreviewability, and failure to state a claim. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464 (D.D.C. June 4, 2024); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1 (D.D.C. 2022); *Shen v. Pompeo*, No. 20-CV-1263, 2021 WL 1246025 (D.D.C. Mar. 24, 2021).

### A. Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that Plaintiffs "must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the constitutional requirement for standing, Plaintiffs must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as

opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).

Here, Secretary Blinken only contests the redressability prong of standing, arguing that he—the only named defendant—cannot provide the requested relief.   ECF No. 5, at 1, 45. Secretary Blinken correctly acknowledges that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).   But Plaintiffs do not seek to have Ms. Moghaddamkia's visa adjudication revised; rather, they seek to have the adjudication completed.   ECF No. 1, at 27-28, Prayer for Relief.   As numerous courts in this district have acknowledged, decisions on the merits are distinct from decisions about timing. *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 10.   "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'" *Id.* (quoting 5 U.S.C. § 555(b)).   Because Secretary Blinken could play a role in the pace of visa adjudications, an order from this court directing him to move more quickly would likely redress Plaintiffs' harms. *See Lujan*, 504 U.S. at 561.   Accordingly, Plaintiffs have satisfied the redressability prong of standing.

### B.   Consular Nonreviewability and Non-Discretionary Duty

Secretary Blinken next raises two non-standing threshold challenges: (1) that the doctrine of consular nonreviewability bars Plaintiffs' claims, ECF No. 5, at 5-9, and (2) that Plaintiffs fail to identify a discrete agency action that Secretary Blinken was obligated to, but did not, take, *id.* at 9-15.   The court is unpersuaded.

First, Secretary Blinken argues that the doctrine of consular nonreviewability prevents this court from reaching the merits.   In the context of visa adjudications, consular nonreviewability

"shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest.*, 985 F.3d at 1024. "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. Ms. Moghaddamkia's visa application remains in administrative processing. ECF No. 1 ¶¶ 5, 28, 82, 91. Thus, the doctrine does not apply.

Second, Secretary Blinken contends that Plaintiffs have failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA. ECF No. 5, at 9-10 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). Secretary Blinken argues that Plaintiffs cannot identify a non-discretionary duty to adjudicate a visa application. ECF No. 5, at 1; *see* ECF No. 5, at 11.[2] Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *5, *Ameer*, 2024 WL 2831464, at *4; *Akrayi v. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023) *aff'd on other grounds*,

---

[2] While Secretary Blinken frames his argument in terms of "re-adjudicating," as explained above, a Section 221(g) refusal is not a final adjudication on a visa.

No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024).  This court agrees with the majority view.  Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations.  *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").[3]

### C.    Unreasonable Delay

On the merits, Secretary Blinken argues that Plaintiffs have failed to state a claim for unreasonable delay on which relief can be granted.  ECF No. 5, at 16-18.  Plaintiffs' claims under the APA and the Mandamus Act share the same standards for obtaining relief.  *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")).  Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or other

---

[3] In a Notice of Supplemental Authority filed on July 29, 2024, ECF No. 24, Secretary Blinken notes a recent decision from the D.C. Circuit, *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), in which the Court held that the plaintiff, who sought adjudication of her visa application, had not shown a clear and indisputable right to relief or a discrete action that the federal defendant had failed to perform.  *Id.* at *3.  Secretary Blinken contends that *Karimova*'s "controlling holding . . . is dispositive of the claims in this case."  ECF No. 24, at 1.  Not so.  *Karimova* is an unpublished opinion, and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2).  This court has considered *Karimova* but declines to follow it.

indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80).  While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay."  *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).  "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider."  *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).  The first and fourth factors are most important in the visa context.  *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).  Weighing the *TRAC* factors here, the court concludes that Plaintiffs have failed to state a claim on which relief can be granted.[4]

The first two factors—requiring agencies to follow "a rule of reason" related to their timelines, and the influence of a congressionally imposed timeline—are typically considered together.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  In essence, these two factors require the court to consider "whether '[t]here [is] any rhyme or reason—congressionally

---

[4] Plaintiffs suggest that application of the *TRAC* factors is premature at the motion-to-dismiss stage.  ECF No. 8, at 26-27.  The court is unpersuaded.  It is the majority view in this district that "application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay."  *Bega v. Jaddou*, No. 22-CV-2171, 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), *aff'd sub nom. Da Costa*, 80 F.4th; *see, e.g.*, *Rostamnia v. Blinken*, No. 23-CV-1638, 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024) (applying the *TRAC* factors in an unreasonable-delay analysis at the motion-to-dismiss stage); *Rashidi v. Dep't of State*, No. 23-CV-1569, 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023) (same).  Such is the case here.

prescribed or otherwise—for an agency's delay.'" *Rashidian*, 2024 WL 1076810, at *6 (quoting *Khazaei*, 2023 WL 6065095, at *6). In analyzing these factors, the court may consider the "complexity of the task at hand." *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Both factors favor Secretary Blinken.

Plaintiffs suggest that there is a congressional timeline based on 8 U.S.C. § 1571(b). ECF No. 8, at 32. That subsection provides:

> It is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b). However, as Plaintiffs acknowledge, "this language is merely precatory" and not binding. ECF No. 8, at 32; *see Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement"). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has concluded that a four-year delay is not unreasonable. *Da Costa*, 80 F.4th at 342. The court is satisfied that Secretary Blinken utilizes a rule of reason that does not constitute unreasonable delay. At the time they filed their complaint, Plaintiffs had waited less than three weeks after Ms. Moghaddamkia's interview with the consular officer and, by the time of this decision, they will have waited about fourteen months. *See* ECF No. 1 ¶ 4. Although such a timeline is undoubtedly frustrating, it does not constitute unreasonable delay when compared to relevant cases.

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors Secretary Blinken.  *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80).   The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the plaintiff] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  Such would be the case here, where moving Ms. Moghaddamkia to the front of the visa adjudication line would merely reorder all applicants with no change in the overall timeline.  Plaintiffs counter that Secretary Blinken has failed to establish that a queue exists and contend that, even if it does, Ms. Moghaddamkia's application should be at the front of it given how much time has elapsed.  ECF No. 8, at 35.  "That assertion, however, does not grapple with the fact that Plaintiffs' request here boils down to a request that they 'should be prioritized for processing ahead of others.'"  *Augustin v. Blinken*, No. 23-CV-76, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023) (quoting *Milligan v. Blinken*, No. 20-CV-2631, 2021 WL 3931880, at *9 (D.D.C. Sept. 2, 2021)).

To be sure, the delay is troubling and certainly frustrating to Plaintiffs.  *See* ECF No. 1 ¶ 87; ECF No. 8, at 32.  But compelling Secretary Blinken to process Ms. Moghaddamkia's visa application presents an individualized solution to a systemic problem and "would presumably delay other adjudications."  *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)).  Plaintiffs present no argument to rebut this point.  Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa adjudication context.  *Arab*, 600 F. Supp. 3d at 71.  It

would be improper for the court to intervene and expedite Ms. Moghaddamkia's visa application at the expense of others.  The fourth factor thus heavily weighs in favor of Secretary Blinken.

The third and fifth factors concern the impacts of the delay on Plaintiffs.  The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'"  *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80).  These factors weigh slightly in Plaintiffs' favor.  Plaintiffs have alleged real human and financial costs, including "severe emotional distress" due to the uncertainty and "a considerable amount of money" spent on visa-related expenses.  ECF No. 1 ¶¶ 87, 89.  These harms are truly unfortunate and undoubtedly frustrating.  However, without more facts suggesting otherwise, these harms do not threaten Plaintiffs' physical health and wellbeing in a manner compelling enough to overcome Secretary Blinken's advantage on the more important factors.  *See Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022).  Plaintiffs allege that "[f]ailing to adjudicate Plaintiff [Moghaddamkia's] visa for over 9 months is an act of extreme bad faith on the part of Defendant while knowing the extreme hardship of Plaintiffs."  ECF No. 8, at 37.  But that is a conclusory allegation unsupported by specific facts that the court need not credit.  *See Iqbal*, 556 U.S. at 678.  "As *TRAC* directs, however, the lack of plausible allegations

of impropriety does not weigh against [Plaintiffs]," but instead "is neutral in the analysis." *Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023).

*   *   *

As the D.C. Circuit explained in *Da Costa*, the delays in visa adjudications are "troubling." 80 F.4th at 344.  But after weighing the *TRAC* factors, the court concludes that Plaintiffs have not plausibly alleged that the delay with Ms. Moghaddamkia's visa is unreasonable.  Accordingly, the court will dismiss the complaint.

**IV.    Conclusion**

For the foregoing reasons, the court will grant Secretary Blinken's motion to dismiss, ECF No. 5.  A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 2, 2024